IN UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
AT BLUEFIELD

C.L.,

      Plaintiff,

v.                                                                              Civil Action No. 1:19-cv-792

DAVID R. WILSON, et al.

      Defendants.

**PLAINTIFF'S RESPONSE TO DEFENDANT
NAKAMOTO GROUP, INC.'S MOTION TO DISMISS**

## Introduction

As discussed below, Plaintiff opposes the Defendant Nakamoto's Motion to Dismiss her claims under both tort and contract as the complaint as pleaded has stated her factual claims with the required specificity and plausibility to state a proper cause of action. Plaintiff seeks a ruling from this court to allow the case to proceed into discovery and a resolution on its merits.

## Factual Background

On December 21, 2017, Grimes resigned from his duties at FPC Alderson and by January 9, 2019, Captain Jerrod Grimes was convicted and was sentenced to prison. The plaintiff was among the victims of Grimes as was noted in the Indictment and in the Complaint filed herein.  This illegal sexual activity was in violation of the Prison Rape Elimination Act and occurred at FPC Alderson.

Much of the conduct for which Grimes admitted responsibility happened in the open and with the knowledge and/or tacit approval of many of the BOP employees who worked there.

The sexual harassment, sexual abuse, and even sexual assaults of various FPC Alderson inmates by Captain Grimes were well-known and patently obvious to the population of inmates and rank-and-file employees, and the Captain's fellow administrators, who were present at the facility on a day-to-day basis.

Nakamoto, as the independent contracted external auditor for PREA compliance at FPC Alderson, had non-discretionary duties, which are laid out at 28 C.F.R.  Part 115. The Nakamoto auditors were required, at a minimum: to review a sampling of relevant documents and other records and information for the most recent one-year period preceding the audit year[1]; access and observe all areas of FPC Alderson[2]; interview a representative sample of inmates and of staff, supervisors, and administrators[3]; and communicate with community-based or victim advocates who may have insight into relevant conditions in the facility.[4] Plaintiffs believe that if Nakamoto had complied with the non-discretionary duties that were statutorily required of them as external auditors, the obvious signs of systemic issues creating the conditions of possibility for the systematic sexual assault of plaintiffs and other inmates at FPC Alderson would have been identified and addressed. Instead, plaintiffs allege that Nakamoto auditors performed perfunctory and deficient reviews of facility records, if at all; failed to access and observe all areas of FPC Alderson, if at all; failed to interview a representative

---

[1] 28 C.F.R. Part 115.401(g).
[2] 28 C.F.R. Part 115.401(h).
[3] 28 C.F.R. Part 115.401(k).
[4] 28 C.F.R. Part 115.401(0).

sample of inmates and staff at the facility, or failed to ensure the that the sampling of inmates and staff was indeed representative; failed to communicate with community-based or victim advocates who may have had insight into relevant conditions in the facility, and otherwise failed to properly adhere to its contractual duties.

Additionally, because the sexual assaults perpetrated by Jerrod Grimes were so open and notorious the failure of Nakamoto to conduct its auditing function with the appropriate duty of care with ordinary skill, care and diligence was a proximate cause of the harm and damages the befell the plaintiff.

## Standard of Review

Defendant has generally stated the correct legal standard of review as it relates to the *Twombly* and *Iqbal* standards, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). To be sure, in order to withstand a motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must plead enough facts "to state a claim to relief that is plausible on its face." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Stated another way, the factual allegations in the complaint "must be sufficient 'to raise a right to relief above the speculative level.'" *Woods v. City of Greensboro*, 855 F.3d 639, 647 (4th Cir. 2017) (quoting *Twombly*, 550 U.S. at 555). Additionally, "[T]o satisfy the plausibility standard, a plaintiff is not required to plead factual allegations in great detail, but the allegations must contain sufficient factual heft to allow a court, drawing on judicial

experience and common sense, to infer more than the mere possibility of that which is alleged." *Nanni v. Aberdeen Marketplace, Inc.*, 878 F.3d 447, 452 (4th Cir. 2017) (internal quotation marks omitted).

However, the defendant is mistaken in its reliance on "judicial notice" and the exhibits attached to the Motion to Dismiss as giving the court the facts necessary to dismiss the claim. This situation is analogous to what was presented to the court in *Rich v. United States*, 811 F.3d 140, (4th Cir. 2015). There, a male federal prisoner was housed, for his protection, in the Special Housing Unit (SHU) of USP Hazelton. When he was placed in the SHU "rec cage" he was viciously and repeatedly stabbed by fellow inmates, one of whom had a nine-inch metal homemade knife or "shiv."  Those inmates had been placed by prison officials in the same SHU "rec cage" with him and Rich alleged, among other things, that "officials failed to screen, 'wand,' or search the inmates properly prior to placing them in the recreation cage with him, *Rich,* at 146.

The defendant attached to its Motion to Dismiss affidavits alleging that the prison officials had performed patdowns or searches of the inmates before placing them in the SHU "rec cage." The court in *Rich*, as the court should here, refused to accept the affidavits at face value and stated the obvious fact: "Even if we accept the prison officials' uncontested declarations, the fact that they performed patdowns does not resolve the question whether the officials performed those patdowns **properly**," *Rich* 147. (emphasis added.) The court then remanded the case "to allow Rich to proceed to discovery on the issue whether and how the prison officials performed the patdowns and searches, and **whether more specific directives existed regarding the manner of performing** the patdowns and searches," *Ibid.*

Likewise, the fact that a contract existed, and an audits were performed does not answer the question as to whether Nakamoto breached its duties under the contract and the specific directives (i.e. the Code of Federal Regulations referred therein) or whether Nakamoto performed the auditing function properly.

## Argument

### Plaintiff's Breach of Contract Claim is Clearly Viable

Nakamoto mis-comprehends West Virginia law respecting a third-party beneficiary claim for breach of contract.  This is plainly evidenced by the following assertion found at Page 5 of its Memorandum:

> Plaintiff's breach of contract claim is based on the allegation that Nakamoto's Contract with the Bureau of Prisons "was made and intended for the benefit of plaintiff **as a member of the class** definitely and clearly within the terms of the contract." Am. Compl. ¶ 202, ECF No. 45 (emphasis added). West Virginia law does not allow this type of third-party beneficiary breach of contract claim.

Upon this, defendant goes on to assert that plaintiff cannot maintain the contract claim because she is not the "sole" beneficiary of the contract as, defendant contends, West Virginia Code §55-8-12 requires.  This is the totality of the defendant's argument. Defendant seeks dismissal of the contract claim upon the singular proposition that plaintiff, alone, must be the contract's beneficiary to maintain the claim.

This argument is simply wrong, and plaintiff has pleaded her contract claim as West Virginia law requires. Seventy years ago, in *United Dispatch v. E.J. Albrecht Co.*, after canvassing the history of §55-8-12 and the many cases it spawned, the West Virginia Supreme Court of Appeals stated:

> We think a consideration of the authorities in this, as well as other, jurisdictions leads to the conclusion that a person not a party to a contract may maintain an action thereon when such contract is made and intended for his sole benefit; and, **likewise, an action may be maintained if the contract is made and intended for the benefit of a class of persons definitely and clearly shown to come within the terms of the contract.** The intent of the contracting parties must appear from the contract or be shown by necessary implication; and be in accordance with the parol evidence rule when the contract under consideration is in writing.

62 S.E.2d 289, 296, 135 W. Va. 34, 45-46, 1950 W. Va. LEXIS 5, *20-21 (emphasis added)

Nakamoto's citation to *Nidy v. United States Bancorp Gov't Leasing & Fin., Inc.*, 2019 U.S. Dist. LEXIS 102299, 2019 WL 2537418, is not helpful to its contentions. It actually illustrates the shortcomings of its contentions.

According to Nakamoto, *Nidy* provides an example of Judge Copenhaver "dismissing a breach of contract claim where there is 'no allegation of fact to support the contention that the contracts were entered into for the 'sole benefit' of [the] plaintiff." (Def. Memo., P. 6) That seems clear enough, but what the *Nidy* opinion actually says is that the breach of contract claim was being dismissed inasmuch as the complaint set forth "no allegation of fact to support the contention that the contracts were entered into for the 'sole benefit' of plaintiff **or those similarly situated to her**." 2019 U.S. Dist. LEXIS 102299, *13, 2019 WL 2537418 (emphasis added). The language Nakamoto removed, when put back in and read in full, converts *Nidy* to a case very supportive of plaintiff.  While plaintiff Nidy did not plead to be a beneficiary among those similarly situated to her, your instant plaintiff went to pains to make just an assertion.

6

Because plaintiff's Amended Complaint[1] is readily available to the court for examination, plaintiff need not regurgitate the many factual allegations which specifically focused on the genesis and purpose of Nakamoto's contractual responsibilities at FPC Alderson which inure to the benefit of plaintiff and other female inmates there detained. However, for present purposes a small sample of some of the paragraphs of the complaint is appropriate:

> (Para) 159. The BOP contracted with Nakamoto to carry out inspections of FPC  Alderson in accordance with the standards mandated by PREA. Nakamoto was contractually obliged to carry out those inspections as part of the auditing process required by PREA for the benefit of all inmates in the custody of FPC Alderson.

> (Para) 187. The purpose of the Prison Rape Elimination Act (PREA) auditing function, which the contract with Nakamoto was to provide for the BOP, was to ensure compliance with the mandates of the Prison Rape Elimination Act (PREA) 34 U.S. Code § 30301.

> (Para) 188. The purpose of the Act is to "provide for the analysis of the incidence and effect of prison rape in Federal, State, and local institutions and to provide information, resources, recommendations and funding to protect individuals from prison rape."

> (Para) 189 C.L. at all times relevant to the allegations herein was a federal inmate and thus an individual to be protected "from prison rape."

> (Para) 190. C.L. as an inmate is a member of the class of persons the PREA auditing function was designed to protect.

> (Para) 191. The contract between Nakamoto and the BOP was made and intended for the benefit of plaintiff as a member of the class definitely and clearly within the terms of the contract.

Although defendant was prudent in not challenging the quality or truth of these factual assertions, by resting completely on a legal argument that is patently errant gains it nothing.  Plaintiff is clearly entitled to proceed on the breach of contract claim.

---

[1] The Amended Complaint is Document 73 of the Court file.

## Plaintiff's Tort Claim Is Clearly Viable

Nakamoto submits that because it was a contract which led it into plaintiff's sphere, there can be no tort liability to plaintiff.  Nakamoto is clearly wrong,

As a threshold matter, based upon the facts of this case, there is nothing theoretically or factually inconsistent with plaintiff presenting her third-party beneficiary breach of contract claim along with a tort claim. Even were it so, Federal Rule of Civil Procedure Rule 8(3) expressly authorizes inconsistent claims within a pleading. "A party may state as many separate claims or defenses as it has, regardless of consistency." If any material inconsistency were ever determined leading to the judicial dooming of one or the other claim, that claim's demise ought to occur at the summary judgment stage after all the material facts are appropriately developed through discovery. Actually, if there is any inconsistency which is presently troubling, it comes from Nakamoto, which claims there is no viable breach of contract claim, while at the same time claiming the tort claim fails as being duplicative of the breach of contract claim.  Nakamoto is doubly wrong.

The recognition of a viable negligence claim begins with an understanding of the source of the duties imposed upon Nakamoto for purposes of both contract and tort. Nakamoto's responsibilities, what it was to do comprehensively and precisely, are not dictated by the written contract document itself, but rather in the federal regulations comprising the PREA audit standards.  Defendant's Memorandum, at Page 2, acknowledges this.  "The scope of a PREA audit is dictated by 28 C.F.R. § 115.401."  The Memorandum elaborates upon the encompassing ways the law governs the audit processes.  These defense descriptions corroborate what plaintiff factually pleads in the Amended Complaint, as admitted by Nakamoto at Page 6 of its Memorandum. "Indeed,

Plaintiff's entire negligence claim is based on Nakamoto allegedly failing to meet the PREA audit standards." This concession that the audit duties are defined by the federal regulations rather than the contract document is further corroborated by an examination of the contract, which defendant submitted to the Court file as Document 99 on 12/16/20 as "Exhibit B" to its Memorandum. There, the description of services to be provided merely alludes to the provision of PREA audit services, leaving it to the law to define just what those services are to be.

The import of this truth in relation to defendant's motion cannot be overstated. As observed in *Christie v. Estate of Walraven*, upon which defendant heavily relies, "Succinctly stated, whether a tort claim can coexist with a contract claim is determined by examining whether the parties' obligations are defined by the terms of the contract." 2019 U.S. Dist. LEXIS 91198, *8, 2019 WL 2338540. Here, Nakamoto's duties are defined by federal law, not by the terms of the written contract, and of course, plaintiff herself as a third-party beneficiary is not even a party to the contract's execution.

This truth undercuts all of four elements of the "gist of the action" test set forth by *Christie*, which is drawn from the West Virginia Supreme Court in *Gaddy Eng'g Co. v. Bowles Rice McDavid Graff & Love, LLP*, 746 S.E.2d 568, 231 W. Va. 577, 2013 W. Va. LEXIS 694, 2013 WL 2920057.  Under this doctrine, recovery in tort will be barred if any of the following factors is demonstrated:

> (1) where liability arises solely from the contractual relationship between the parties; (2) when the alleged duties breached were grounded in the contract itself; (3) where any liability stems from the contract; and (4) when the tort claim essentially duplicates the breach of contract claim or where the success of the tort claim is dependent on the success of the breach of contract claim.

2019 U.S. Dist. LEXIS 91198, *8, 2019 WL 2338540

Scrutinizing our facts under the lens of this test, it is readily seen that all elements fall in plaintiff's favor.  Nakamoto's liability in tort emanates from its failures to meet obligations imposed upon it as auditor by federal law, not solely by virtue of its contract with the Bureau of Prisons.  The duties Nakamoto failed to meet are those imposed by federal regulations. Any liability in tort comes from those federal law failures, not failures of duties otherwise imposed by contract. The tort claim is its own animal, based on federal law violations and not reliant on any breach of contract concepts, and it stands independent of the contract claim.  In other words, plaintiff can win the tort claim while somehow losing the contract claim or vice versa. That is independence.

For purposes of the tort claim, the instant case is analogous to the common independent contractor case where a contractor, here Nakamoto, is on a job purely because it entered into a contractual relationship with an entity to supply services of some type, and it is later haled into court by a third party claiming injury due to the contractor's  failure to perform its services in accordance with applicable governmental standards. The injured party's claim does not depend on whether the contractor breached its contract but on whether it breached a duty of care under tort principles.

This is not theoretical musing. A recent West Virginia Supreme Court decision, substantially similar to the factual situation presented in the instant case, leaves no doubt whether plaintiff's tort claim against Nakamoto may proceed.  *Bragg v. United States*, 741 S.E.2d 90, 230 W. Va. 532, 2013 W. Va. LEXIS 47, 2013 WL 490776, is instructive.  *Bragg* was the Supreme Court's answer to a Fourth Circuit certified question in the context of workplace wrongful death claims. The occurrence giving rise to the claim was a coal mine fire that resulted in the deaths of the plaintiffs' decedents.

10

Alleging that MSHA[1] inspectors failed to appropriately fulfill their highly regulated

obligations which relate to matters of safety, leading to the perpetuation of various

hazards,[2] plaintiffs sued the United States under the Federal Tort Claims Act ("FTCA").

As to the legal framework of the certified question, the Supreme Court noted,

> Under the FTCA, the United States' sovereign immunity is waived for torts
> committed by federal employees acting within the scope of their
> employment "under circumstances where the United States, if a private
> person, would be liable to the claimant in accordance with the law of the
> place where the act or omission occurred." 28 U.S.C. § 1346(b)(1) (1996)
> (2006 ed.).

741 S.E.2d 90, 94, 230 W. Va. 532, 536, 2013 W. Va. LEXIS 47, *9, 2013 WL 490776

Upon this, the State court set forth to answer the following certified question, which

goes to the issue of tort duty of care.

> Whether a private party conducting inspections of a mine and mine
> operator for compliance with mine safety regulations is liable for the
> wrongful death of a miner resulting from the private party's negligent
> inspection?

741 S.E.2d 90, 94, 230 W. Va. 532, 536, 2013 W. Va. LEXIS 47, *10_11, 2013 WL 490776

The question posed and the facts surrounding it neatly superimposes upon the

instant case and our own facts. For instance, Nakamoto is a private entity auditing--a

function which encompasses inspecting--a federal prison in furtherance of a federally

regulated program of rape prevention.  It is beyond argument that a concern for rape

---

[1] "MSHA" is the acronym for the Mine Safety and Health Act, 30 U.S.C. §801, et seq.

[2] As *Bragg* recites, among the official findings of MSHA's internal investigation into the
fire was "MSHA's failure to more effectively enforce the Mine Act allowed significant
hazards, many of which otherwise might have been identified and addressed, to
continue in existence prior to the fatal fire." 741 S.E.2d 90, 93, 230 W. Va. 532, 535,
2013 W. Va. LEXIS 47, *8, 2013 WL 490776

prevention is a concern for safety.   In *Bragg* the concern for safety was for miners, and here the concern is clearly for inmates(prisoners) such as plaintiff, subject to sexual assault by other inmates and correctional staff as well. There is no material difference in determining whether an MSHA inspector owes a tort duty of care to the miners and whether a PREA auditor owes a duty to the prison inmates. In short, the State Supreme Court's answer in *Bragg* serves to answer whether a viable tort claim, independent of a contract claim, exists here.

The certified question was answered in the affirmative—there is a tort duty of care.  Early in the relevant analysis, the court observed:

> With regard to liability based upon negligence, this Court held that '[i]n the matters of negligence, liability attaches to a wrongdoer, not because of a breach of a contractual relationship, but because of a breach of duty which results in an injury to others.'

741 S.E.2d 90, 97, 230 W. Va. 532, 539, 2013 W. Va. LEXIS 47, *19, 2013 WL 490776

Then, explicating seminal West Virginia common law on duty, the court focused heavily and favorably, and offered at syllabus point 3, the following principles:

> 3. "The ultimate test of the existence of a duty to use care is found in the foreseeability that harm may result if it is not exercised. The test is, would the ordinary man in the defendant's position, knowing what he knew or should have known, anticipate that harm of the general nature of that suffered was likely to result?" Syllabus point 3, *Sewell v. Gregory*, 179 W. Va. 585, 371 S.E.2d 82 (1988).

The ultimate result of the court's reasoning was,

> [W]e now hold that a private inspector who inspects a work premises for the purpose of furthering the safety of employees who work on said premises owes a duty of care to those employees to conduct inspections with ordinary skill, care, and diligence commensurate with that rendered by members of his or her profession.

12

741 S.E.2d 90, 99_100, 230 W. Va. 532, 541_542, 2013 W. Va. LEXIS 47, *28_29, 2013 WL 490776

For Nakamoto the test is whether it met the standards contained in a number of specific requirements outlined in over 50 pages in 28 C.F.R. § 115.401 which are part of the contract and/or whether they conducted their inspections with the appropriate duty of care. As for negligence, like the court in *Rich, supra,* the court now must examine not whether an audit was performed at all but whether the audit was performed properly.

### **The Discovery Rule Tolled the Statute of Limitations on the Tort Claim**

Plaintiff does not dispute defendant's contentions that the statute of limitations on her tort claim is two years, per West Virginia Code §55-2-12(b), and that the sexual assaults ended on December 21, 2017, when rapist guard Jerrod Grimes left FPC Alderson. However, plaintiff does dispute defendant's ultimate contention that plaintiff's tort claim is barred by the statute of limitations. Whereas defendant heavily focuses on the machinations of Rule of Civil Procedure 15(c)(1)(C) pertaining to "Relation Back of Amendments," instead the focus should be on the discovery rule, for it is the reason the claim may proceed.

The predominant West Virginia case on the discovery rule is *Dunn v. Rockwell,* 689 S.E.2d 255, 225 W. Va. 43, 2009 W. Va. LEXIS 127. *Dunn's* Syllabus Points 2 and 3 provide:

> 2. The "discovery rule" is generally applicable to all torts, unless there is a clear statutory prohibition to its application.
>
> 3. "In tort actions, unless there is a clear statutory prohibition to its application, under the discovery rule the statute of limitations begins to run when the plaintiff knows, or by the exercise of reasonable diligence, should know (1) that the plaintiff has been injured, (2) the identity of the entity who owed the plaintiff a duty to act with due care, and who may have engaged in conduct that breached that duty, and (3) that the conduct

13

of that entity has a causal relation to the injury." Syllabus Point 4, *Gaither v. City Hosp., Inc.*, 199 W.Va. 706, 487 S.E.2d 901 (1997).

689 S.E.2d 255, 259, 225 W. Va. 43, 46, 2009 W. Va. LEXIS 127, *1

With the discovery rule in play, the objects of focus within Syllabus Point 3 are elements (2) and (3).  Undoubtedly, were we addressing plaintiff's claims against defendant rapist Grimes, these two elements would provide plaintiff no excuse for a late filing; but we are instead addressing defendant Nakamoto, and the same cannot be said for it.

The Amended Complaint bringing plaintiff's causes of action against Nakamoto was filed October 1, 2020.  As an incarcerated person of limited sophistication having no attorneys under contract to assess her claim, plaintiff did not know, nor by the exercise of reasonable care should she have known, as of October 1, 2018, i.e., more than two years before the Amended Complaint was filed, that Nakamoto owed her a duty to act with due care and may have engaged in conduct that breached that duty (element 2), or that Nakamoto's conduct has a causal relation to her injuries (element 3).  While plaintiff is prepared to prove these factual assertions, it is not incumbent upon her to do so now, in the legal setting of a Rule 12(b) motion to dismiss.

Syllabus Point 5 of *Dunn* confirms that it is for the trier of fact to determine if the discovery rule is available to plaintiff's tort claims.

> 5. A five-step analysis should be applied to determine whether a cause of action is time-barred. First, the court should identify the applicable statute of limitation for each cause of action. **Second, the court (or, if questions of material fact exist, the jury) should identify when the requisite elements of the cause of action occurred. Third, the discovery rule should be applied to determine when the statute of limitation began to run by determining when the plaintiff knew, or by the exercise of reasonable diligence should have known, of the elements of a possible cause of action, as set forth in Syllabus Point 4 of *Gaither v. City Hosp., Inc.*, 199 W.Va. 706, 487 S.E.2d 901 (1997).** Fourth, if the plaintiff is not entitled to the benefit of the discovery rule, then determine whether the

defendant fraudulently concealed facts that prevented the plaintiff from discovering or pursuing the cause of action. Whenever a plaintiff is able to show that the defendant fraudulently concealed facts which prevented the plaintiff from discovering or pursuing the potential cause of action, the statute of limitation is tolled. And fifth, the court or the jury should determine if the statute of limitation period was arrested by some other tolling doctrine. **Only the first step is purely a question of law; the resolution of steps two through five will generally involve questions of material fact that will need to be resolved by the trier of fact.**

689 S.E.2d 255, 259, 225 W. Va. 43, 46, 2009 W. Va. LEXIS 127, *2-3 (emphasis added.)

In keeping with these principles, it is manifest that defendant is not entitled to have plaintiff's tort claims jettisoned as matter of law upon its Rule 12 motion to dismiss.

## Conclusion

For the foregoing reasons, Plaintiff respectfully requests that the Court issue an order denying the Defendant, Nakamoto's Motion to Dismiss with prejudice.

Respectfully submitted,

*/s/Jay T. McCamic*
Jay T. McCamic, Esq. (WVSB# 2386)
McCamic Law Firm, PLLC
80 12th Street, Ste. 305
P.O. Box 151
Wheeling, WV 26003
Telephone: 304-238-9460
Fax: 304-830-5324
jay@mccamic.com

*s/L. Dante diTrapano*
L. Danté diTrapano, Esq. (WVSB# 6778)
500 Randolph Street
Charleston, WV 25302
Telephone: 304-343-4323
Fax: 304-344-3684
dditrapano@cldlaw.com
Benjamin Adams, Esq. (WSB# 11454)
badams@calwelllaw.com
Alex McLaughlin, Esq. (WVSB# 9696)

amclaughlin@calwelllaw.com

*s/Anthony I. Werner*
Anthony I. Werner, Esq. (WVSB# 5203)
John & Werner Law Offices, PLLC
Board of Trade Building, STE 200
80 - 12th Street
Wheeling, WV 26003
Telephone: 304-233-4380
Fax: 304-233-4387
awerner@johnwernerlaw.com

COUNSEL FOR PLAINTIFF

CERTIFICATE OF SERVICE

I hereby certify that on ___December 22, 2020___, I electronically filed the above

motion with the Clerk of the Court using the CM/ECF system, which will send

notification of such filing to all counsel of record.


/s/ Jay T. McCamic
Jay T. McCamic, Esq.

17